DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**J.L. PROPERTY OWNERS ASSOCIATION, INC.,**
Appellant,

v.

**TIMOTHY F. SCHNURR,** as executor of the Estate of James V. Schnurr,
and **CHRISTINE SCHNURR,** individually,
Appellees.

No. 4D19-3474

[January 5, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lisa S. Small, Judge; L.T. Case No. 50-2016-CA-009882-XXXX-MB.

Kathryn L. Ender, Todd R. Ehrenreich, and Brian Goldenberg of Lewis Brisbois Bisgaard & Smith, LLP, Coral Gables, for appellant.

Bard D. Rockenbach of Burlington & Rockenbach, P.A., West Palm Beach, Gregg A. Schlesinger, Jonathan Gdanski, Zane Berg, and Cristina Sabbagh of Schlesinger Law Offices, P.A., Fort Lauderdale, Crane A. Johnstone of Johnstone Law, P.A., Fort Lauderdale, and Thomas P. Angelo and James W. Carpenter of Angelo & Banta, P.A., Fort Lauderdale, for appellees.

LEVINE, J.

James Schnurr collided with a bollard while riding his bike in the Jonathan's Landing community. As a result of the accident, he was rendered a quadriplegic. The jury found in favor of Mr. Schnurr and his wife on claims for negligence and loss of consortium. Appellant, J.L. Property Owners Association ("JLPOA"), argues the trial court erred by: (1) precluding Jonathan's Landing, Inc. ("the developer"), the original entity that installed the bollards, from appearing on the verdict form as a *Fabre* defendant, (2) giving a preemptive jury instruction relating to JLPOA's control of the premises, (3) committing cumulative error, and (4) denying a new trial, where the trial court found the future medical expenses were excessive and the party adversely affected by the remittitur did not agree to the remittitur.

As to issue 1, we affirm, as the trial court did not err, in these circumstances, in not placing the developer on the verdict form as a *Fabre* defendant. We affirm issues 2 and 3 without further comment. As to issue 4, however, we find the trial court erred by not granting a new trial for future medical expenses. As such, we affirm on all issues, except we reverse and remand for a new trial on future medical expenses.

James Schnurr and his wife, Christine Schnurr, were riding bicycles on a promenade in the Jonathan's Landing community when his bicycle struck one of two bollards installed within the promenade at a spot located just before the promenade crossed the roadway. The bollards were posts in the ground used to block roadway traffic from turning into the promenade.

As a result of hitting the bollard, Mr. Schnurr was ejected from his bicycle and landed on the ground. He sustained fractures to his neck which rendered him a quadriplegic. Mr. Schnurr was sixty-four years old at the time of the accident.

The Schnurrs filed suit, asserting negligence and loss of consortium against JLPOA and Jonathan's Landing Golf Club ("Golf Club"). Among its affirmative defenses, JLPOA asserted that the developer designed and installed the bollards. The Golf Club settled before trial.

The evidence at trial showed that Jonathan's Landing is a master planned community. In 1992, the developer granted JLPOA a non-exclusive easement for ingress and egress of the promenade. In 1995, the developer transferred ownership of the community to the Golf Club. The developer ceased to exist in 2009.

JLPOA's articles of incorporation and the amended declaration of covenants and restrictions stated that JLPOA had a duty to maintain the promenade. Additionally, JLPOA's corporate representative and JLPOA's president at the time of the accident both testified that JLPOA had a duty under the declaration to maintain the promenade.

Multiple experts testified that the bollards were inconspicuous and difficult to see because they blended into the background. The bollards were painted "beige or tan" instead of a high contrast color, such as yellow. The bollards had small reflectors on them, but they were not reflective. There were no pavement markings or other warnings to alert a person traveling in the promenade that they were approaching the bollards.

The bollards were installed without a permit and were contrary to various building codes and construction guidelines. Evidence was conflicting as to when the bollards were installed and who installed them. The bollards did not appear on the original design plan or the 1998 survey, but they did appear on the 2004 survey, which suggested they were installed sometime between 1998 and 2004. However, a former employee of the developer testified the bollards were installed in the mid-1980s when the clubhouse construction was complete, sometime around 1984 or 1985.

After a motion by the Schnurrs, the trial court precluded the addition of the developer as a *Fabre* defendant on the jury verdict form. The trial court found that the developer did not have a duty to maintain the property and did not have control over the property because the developer was "long gone." However, the trial court permitted JLPOA to argue as a defense that the developer had installed the bollards.

The jury found that JLPOA was negligent in failing to warn Mr. Schnurr of a dangerous condition. However, the jury also found that JLPOA was not negligent in failing to maintain the promenade in a reasonably safe condition. The jury assigned fault as follows: 45% to JLPOA, 50% to Mr. Schnurr, and 5% to the Golf Club.

The jury found damages in the total amount of $41,050,000. That amount included, for Mr. Schnurr, $4.8 million in past medical expenses, $12 million in future medical expenses, $750,000 for past lost earnings, $3.5 million for future lost earning capacity, $10 million for past loss of the capacity for the enjoyment of life, and $5 million for future loss of the capacity for the enjoyment of life. The total amount also included, for Mrs. Schnurr, $5 million for loss of consortium.

On May 30, 2019, JLPOA moved for remittitur. JLPOA requested that the trial court remit the award for future medical expenses to $5,782,811 or, alternatively, order a new trial. During a hearing on September 12, 2019, the Schnurrs' counsel stated that they would accept the $5,782,000 figure. Only at the end of the hearing did the Schnurrs' counsel inform the court and JLPOA that Mr. Schnurr had died five days before the hearing. In response, JLPOA stated that "[t]here are certain issues that now come up." The hearing concluded after discussions of additional filings and a future hearing.

Shortly thereafter, JLPOA moved for leave to amend its post-trial motion for new trial and remittitur due to Mr. Schnurr's death. JLPOA requested that the court award a new trial on damages or, alternatively, to

remit the future damages award to zero. The trial court denied the amended motion for leave to amend and remitted Mr. Schnurr's future medical expenses to $5,782,811, finding that amount was supported by the trial testimony and the evidence. In doing so, the trial court noted that section 768.74 requires a trial court to determine whether a damage award is excessive "in light of the facts and circumstances which were presented to the trier of fact."

After the trial court's order, JLPOA filed an objection to entry of final judgment, expressly objecting to remittitur and requesting that a new trial be ordered on all future damages. During a subsequent hearing, JLPOA reiterated its rejection of the remittitur and again requested a new trial on future damages. The Schnurrs' counsel responded that JLPOA was not entitled to a new trial because JLPOA "got exactly what they asked for." The trial court overruled JLPOA's objection, finding that the court was limited to the evidence presented at trial, and death is not something to consider in addressing remittitur. The trial court did not address whether JLPOA had a right to a new trial by now rejecting the amount of remittitur.

The trial court, after applying the jury's comparative fault percentage findings, entered a final judgment directing that Mr. Schnurr recover from JLPOA $12,497,054.15 and Mrs. Schnurr recover $2,250,000 for a total judgment of $14,747,054.15. Following a motion, Mr. Schnurr's estate was substituted as a plaintiff. This appeal follows.

## I. *Fabre*

JLPOA argues that the trial court erred in striking JLPOA's *Fabre* defense as to the developer, a non-party to this lawsuit, and by preventing the jury from apportioning fault to the developer on the verdict form. JLPOA further argues that a non-party *Fabre* defendant need not have control over the premises to be included on a verdict form for apportionment of fault. The Schnurrs argue that the trial court correctly excluded the developer from the verdict form since the developer was not involved in the premises for decades prior to Mr. Schnurr's injury.

We review de novo "[w]hether a *Fabre* defendant should have been on the verdict form." *Okeechobee Aerie 4137, Fraternal Order of Eagles, Inc. v. Wilde*, 199 So. 3d 333, 341 (Fla. 4th DCA 2016).

The comparative fault statute, section 768.81, Florida Statutes, provides that "[i]n a negligence action, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." §

4

768.81(3), Fla. Stat. (2019). "[I]n determining noneconomic damages fault must be apportioned among all responsible entities who contribute to an accident even though not all of them have been joined as defendants." *Nash v. Wells Fargo Guard Servs., Inc.*, 678 So. 2d 1262, 1263 (Fla. 1996). "A '*Fabre* defendant' is a nonparty defendant whom a party defendant asserts is wholly or partially responsible for the negligence alleged." *Royal Palm Hotel Prop., LLC v. Deutsche Lufthansa Aktiengesellschaft, Inc.*, 133 So. 3d 1108, 1110 n.1 (Fla. 3d DCA 2014) (citation omitted).

JLPOA had the burden of proving the developer's fault contributed to the accident in order to include the non-party on the verdict form. *Nash*, 678 So. 2d at 1264. "In order to allocate any or all fault to a nonparty and include the named or unnamed nonparty on the verdict form for purposes of apportioning damages, a defendant must prove at trial, by a preponderance of the evidence, the fault of the nonparty in causing the plaintiff's injuries." § 768.81(3)(a)(2), Fla. Stat. (2019). It is important to note that a nonparty may be included on a jury verdict form even if the nonparty is immune from suit or the statute of limitations has run. *See Y.H. Invs., Inc. v. Godales*, 690 So. 2d 1273 (Fla. 1997).

We find that the trial court did not err in declining to include the developer on the verdict form as a *Fabre* defendant. The developer had no involvement in or control over the Jonathan's Landing community for over two decades prior to Mr. Schnurr's injury. The developer granted JLPOA an easement over the promenade in 1992 and transferred ownership of the community to the Golf Club in 1995. The accident occurred in 2016.

The law is clear that control is a prerequisite to liability for failure to maintain and duty to warn of dangerous conditions. "A premises liability claim is a negligence claim with the added elements of *possession/control* of the premises, and notice of the dangerous condition." *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. 4th DCA 2020) (emphasis added) (citation and internal quotation marks omitted). "It is well settled that a public or private entity which owns, operates, or *controls* a property, including a roadway, owes a duty to maintain that property, and a corresponding duty to warn of and correct dangerous conditions thereon." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004) (emphasis added). "[I]t is not ownership of the property which determines the duty of care, but rather, the failure of a person who is in *actual possession and control . . .* to use due care to warn or to exclude, licensees and invitees from areas known to the possessor to be dangerous because of operations or activities or conditions." *Worth v. Eugene Gentile Builders*, 697 So. 2d 945, 947 (Fla. 4th DCA 1997) (emphasis added) (citation and internal quotation marks omitted).

*Pertl v. Exit Information Guide, Inc.*, 708 So. 2d 956 (Fla. 1st DCA 1997), is instructive. In that case, a painter fell through the skylight of a commercial building while making repairs. *Id.* at 957. The estate sued the owner and former owner for negligence. *Id.* Several skylights had been painted over and it was difficult to distinguish the skylight panels from the metal roofing due to deterioration and discoloration. *Id.* at 958. The First District found that "[s]ince there is nothing in the record to suggest that [the previous owner] exercised any *control* over the property on the date of the accident, [the previous owner] owed no duty to business invitees to maintain the premises in a reasonably safe condition, or to warn of the concealed peril of the deteriorated fiberglass skylight." *Id.* (emphasis added). Similarly, in the instant case, the developer did not exercise any control over the promenade on the date of the accident, and thus owed no duty to maintain the premises in a reasonably safe condition or warn of any danger.

Further, ordinarily "a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession." Restatement (Second) of Torts § 352 (1965); *see also Wagner v. City of Hialeah*, 462 So. 2d 482, 482 (Fla. 3d DCA 1984); *Slavin v. Kay*, 108 So. 2d 462 (Fla. 1958). An exception to this rule exists where a vendor conceals or fails to disclose to the vendee any condition "which involves unreasonable risk to persons on the land." Restatement (Second) of Torts § 353 (1965). In that case, the vendor remains liable to the vendee and others "until the vendee has had reasonable opportunity to discover the condition and to take such precautions." *Id.*; *see also Bass v. Jones*, 533 So. 2d 780 (Fla. 1st DCA 1988).

Because the jury found JLPOA had a duty to warn, the jury necessarily found the danger was latent. *See Holsworth v. Fla. Power & Light Co.*, 700 So. 2d 705, 708 (Fla. 4th DCA 1997) ("[A]n owner is required to warn only of latent defects."). A latent defect is one not apparent by the use of one's ordinary senses from a casual observation of the premises, or hidden from the knowledge as well as from the sight and not discoverable by the exercise of reasonable care. *Id.*

Liability could not be assigned to the developer for any latent defect because JLPOA had a "reasonable opportunity to discover the condition and to take such precautions." Restatement (Second) of Torts § 353 (1965). As explained in comment (g) to section 353 of the Restatement:

6

The liability of the vendor stated in this Section does not continue for an indefinite period throughout the subsequent history of the land sold. Where there is no active concealment by the vendor, it continues only until the vendee, or his successors, have had adequate time and opportunity, through occupation of the land or otherwise, to discover the existence of the condition, and to take effective precautions against it by repair or other means. In determining what is sufficient opportunity, various factors are to be considered. *One is the time elapsed; a vendee who has been in possession for only a week cannot be expected to discover and remedy conditions which one who has been in occupation four years may reasonably be expected to find and repair.* A second is the nature of the condition. *A very latent defect, not likely to be discovered in the course of normal inspection or use of the land, may make the vendor liable for a considerable length of time after he surrenders possession, whereas a somewhat more obvious one, which might reasonably be expected to be discovered in the course of normal use, would make him liable only for a shorter time.* A third is the use made of the land by the vendee. One who occupies land as his dwelling may reasonably be expected to discover conditions of which he might reasonably remain unaware if the land were allowed to remain vacant.

Where the vendor actively conceals the condition, either by hiding it or by misleading the vendee into a failure to discover it, any delay in such discovery is to be attributed to the vendor himself. He therefore remains liable until the vendee has in fact discovered the condition, and has had adequate opportunity to take precautions against it.

(emphasis added).

In this case, twenty-four years elapsed from the time the developer transferred the promenade easement to JLPOA in 1992 and the time the accident occurred in 2016. The condition of the bollards was not a "very latent defect" but rather a "more obvious one, which might reasonably be expected to be discovered in the course of normal use." Certainly, under the circumstances of this case, JLPOA had more than reasonable opportunity to discover the condition of the bollards and take necessary precautions. Instead, the evidence at trial documented that JLPOA painted the bollards beige, which had the effect of blending the bollards

7

into the surroundings. Rather than ameliorating the danger, JLPOA appeared to make it worse.

## II. Remittitur

JLPOA argues that the trial court erred by denying its motion for new trial on future medical expenses because section 768.74(4) requires a new trial on damages when the "adversely affected" party "does not agree" to remittitur. The Schnurrs respond that the trial court did not err because remittitur cannot be used to reduce the award based on events that occur after trial.

We find that the trial court erred in denying the motion for new trial for several reasons. First, the trial court did not comply with the plain language of section 768.74(4), which states that the trial court shall order a new trial if the adversely affected party does not agree to remittitur. Second, there was no meeting of the minds because JLPOA withdrew its request to remit the award to $5.7 million, and the Schnurrs' counsel could not accept a pending offer of remittitur after Mr. Schnurr's death.

Generally, "[o]rders on motions for remittitur are reviewed for abuse of discretion." *Weinstein Design Grp., Inc. v. Fielder*, 884 So. 2d 990, 1002 (Fla. 4th DCA 2004). However, whether the trial court correctly applied the correct law is reviewed de novo. *Pompano Beach Cmty. Redevelopment Agency v. Holland*, 82 So. 3d 1034, 1036 (Fla. 4th DCA 2011). The interpretation of a statute is also an issue of law reviewed de novo. *Kelly v. Green Tree Servicing, LLC*, 300 So. 3d 244, 245 (Fla. 4th DCA 2020). In interpreting a statute, a court looks to the language of the statute and its plain meaning. *Id.* "When the language of a statute is clear and unambiguous, a court may not resort to the rules of statutory construction." *Id.*

On a motion for remittitur, the trial court must "review the amount of such award to determine if such amount is excessive . . . in light of the facts and circumstances which were presented to the trier of fact." § 768.74(1), Fla. Stat. (2019). "If the party adversely affected by such remittitur or additur does not agree, the court *shall* order a new trial in the cause on the issue of damages only." § 768.74(4), Fla. Stat. (2019) (emphasis added).

> [A] "party adversely affected" . . . is the party complaining about the amount of the trial judge's additur or remittitur which is ordered in lieu of a new trial because of the jury verdict's excessiveness or inadequacy. We recognize that our

decision means that only when the parties agree with the trial court's amount of remittitur or additur will the remittitur or additur be enforced in lieu of a new trial. This construction also recognizes that the statute is authorization for a trial judge to decide the amount of a remittitur or additur which, if accepted by the parties, will avoid the time and expense of a new trial.

*Waste Mgmt., Inc. v. Mora*, 940 So. 2d 1105, 1109 (Fla. 2006). "For preservation purposes, all that should be required is that it is clear on the record that the trial court fixed an additur or remittitur to which the party did not consent." *Olivas v. Peterson*, 969 So. 2d 1138, 1140 (Fla. 4th DCA 2007).

In *Concept, L.C. v. Gesten*, 662 So. 2d 970, 974 (Fla. 4th DCA 1995), the trial court followed the correct procedure in "set[ting] aside that part of the jury verdict that was contrary to the law and the evidence, and reduc[ing] the damages to the highest amount that the jury could properly have awarded consistent with the limited issue submitted to the jury." However, the trial court "reversibly erred in not granting appellants the choice of accepting the remittitur or a new trial. That appellants, given the option, would not have accepted the remittitur, is adequately manifested by this appeal." *Id.*

Similarly, the court in *Shalhub v. Andrews Roofing & Improvement Co.*, 530 So. 2d 1052, 1053 (Fla. 3d DCA 1988), found no error in the trial court entering a remittitur. However, the Third District found, based on section 768.74, that "the trial court erred in not giving [the appellant] the option of accepting the remittitur or having a new trial limited to the issue of damages." *Id.*

Like in *Concept* and *Shalhub*, here the trial court erred by not following the plain language of section 768.74 because JLPOA did not agree to remittitur both before and after the trial court ruled on the remittitur amount. The jury awarded Mr. Schnurr $12 million for future medical expenses. Initially, JLPOA requested that the trial court remit the cost of future medical expenses to $5,782,811 or order a new trial. At the beginning of the September 12, 2019 remittitur hearing, the Schnurrs' counsel stated he would accept $5.7 million as the remitted amount for future medical costs. Only at the end of the hearing did the Schnurrs' counsel inform the court and opposing counsel that Mr. Schnurr had died five days before the hearing. Shortly thereafter, JLPOA then filed an amended motion requesting the trial court to either grant a new trial on damages or remit the future damages award to zero. JLPOA no longer

agreed to the $5.7 amount for remittitur, as evidenced by its request to remit it to zero or grant a new trial.

The trial court ultimately determined that the damage award of $12 million was excessive. However, the trial court denied the request for a new trial and remitted the amount to the $5.7 million based on the fact that a damage award can be remitted "in light of the facts and circumstances which were presented to the trier of fact." Although it is true that the trial court should remit based on the facts and circumstances presented to the trier of fact, it is also true that once the trial court determined that amount was excessive, and the party adversely affected by the remittitur does not agree, then the trial court "shall" order a new trial on the issue of damages. *See* § 768.74(4), Fla. Stat. (2019); *Mora*, 940 So. 2d at 1109. In the present case, JLPOA objected to the remittitur amount, and the trial court still denied the request for a new trial in its remittitur order.

It is clear in this case that if JLPOA initially agreed to a remittitur to $5.7 million, JLPOA withdrew its agreement long before the trial court ruled and granted the remittitur. JLPOA had the right to withdraw its initial proposal, especially when it was belatedly informed of Mr. Schnurr's death. In fact, a party can simply not agree to the remittitur amount for any reason. The statutory language of section 768.74 does not limit the grounds for a party's acceptance or rejection of remittitur. Since JLPOA did not agree to the amount of the remittitur, the trial court was required to order a new trial. Thus, the trial court erred in not granting a new trial.

Acceptance of a remittitur is "the equivalent to a settlement of the action." *Evans v. Calmar S.S. Co.*, 534 F.2d 519, 522 (2d Cir. 1976). For there to be a valid settlement agreement, there must be a meeting of minds. *Cheverie v. Geisser*, 783 So. 2d 1115, 1118 (Fla. 4th DCA 2001). Clearly in this case, there was no meetings of minds. The initial motion for remittitur was filed nearly four months before the September 12 hearing. JLPOA proposed the $5.7 million award on future medical expenses without any knowledge of Mr. Schnurr's death. Conversely, the record appears to demonstrate that the Schnurrs' counsel did not agree to the remittitur until after Mr. Schnurr's death. JLPOA was entitled to withdraw its initial motion for remittitur in these circumstances and require the trial court to adhere to the dictates of section 768.74.

There was never a meeting of minds, not only because JLPOA did not agree, but also because the Schnurrs' counsel was not capable of agreeing on Mr. Schnurr's behalf. When the Schnurrs' counsel went to the initial remittitur hearing on September 12, Mr. Schnurr had died five days

10

earlier, and the estate had not been substituted for the deceased. Although counsel also represented the wife at the time of the hearing, that would not equate to counsel being able to represent his deceased client or any future executor yet appointed. *See Rogers v. Concrete Scis, Inc.*, 394 So. 2d 212, 213 (Fla. 1st DCA 1981) (recognizing that death terminates the attorney-client relationship); *Sullivan v. Sessions*, 80 So. 2d 706, 707 (Fla. 1955) (recognizing that a personal representative stands in the decedent's shoes). Mr. and Mrs. Schnurr were different clients with different claims.

Further, when the trial court granted the remittitur, it still had Mr. Schnurr as a party to that motion. It is clear that "[a]n offeree's power of acceptance is terminated when the offeree or offeror dies . . . ." 30 Williston on Contracts § 77:70 (4th ed.); *see also* Restatement (Second) of Contracts § 48 (1981) ("When the offeree dies . . . acceptance is impossible."). Thus, the Schnurrs' counsel was without power on September 12 to accept the remittitur at that hearing. *See Rogers*, 394 So. 2d at 213 (finding that plaintiff's attorney could not accept a pending settlement offer after plaintiff's death because "[t]he death of a client terminates the relationship between the attorney and client and the attorney's authority to act by virtue thereof is extinguished").

Contrary to what the dissent claims, the party "adversely affected" is the party "complaining" about the amount of the trial court's remittitur, which in this case is JLPOA. *See Mora*, 940 So. 2d at 1109. JLPOA objected both before and after the trial court's ruling on remittitur. Consequently, JLPOA, as the adversely affected party, had the right, once the trial court granted the motion for remittitur, to accept the remitted amount or request a new trial on future medical expenses for any reason.

Finally, it must be noted, that "[a]n attorney is first an officer of the court, bound to serve the ends of justice with openness, candor, and fairness to all." *Ramey v. Thomas*, 382 So. 2d 78, 81 (Fla. 5th DCA 1980); *see also R. Regulating Fla. Bar* 4-3.3. "[T]he duty of candor imposes an obligation on counsel to notify the court of any development that may conceivably affect the outcome of the litigation . . . ." *Merkle v. Guardianship of Jacoby*, 912 So. 2d 595, 600 (Fla. 2d DCA 2005). The passing of Mr. Schnurr would clearly fall under the category of such an event. Candor to the court ought to be timely, never belated. *See id.* (noting that the duty of candor compels "prompt disclosure"). It is regrettable that counsel did not immediately, at the beginning of the September 12 hearing, disclose the information to opposing counsel and the trial court, if not earlier upon being notified of Mr. Schnurr's death.

11

In conclusion, we find that the trial court did not err in not allowing the developer to be listed as a *Fabre* defendant on the verdict form. The trial court did err, however, in not granting a new trial on future medical expenses when JLPOA did not agree to the remittitur amount. Thus, we affirm on liability, but reverse and remand for a new trial on future medical expenses.

*Affirmed in part, reversed in part, and remanded.*

GERBER, J., concurs.
WARNER, J., concurs in part and dissents in part with opinion.

WARNER, J., concurring in part and dissenting in part.

While I concur in the majority opinion's analysis of the *Fabre* issue, I would affirm the order on remittitur, as JLPOA was not the adversely affected party entitled to challenge the order on appeal. JLPOA received exactly the relief it was entitled to receive under the statute.

Post-verdict, JLPOA moved for a new trial, as well as remittitur pursuant to section 768.74, Florida Statutes (2019). That statute provides:

> (1) In any action to which this part applies wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is excessive or inadequate *in light of the facts and circumstances which were presented to the trier of fact.*
>
> . . . .
>
> (4) If the party adversely affected by such remittitur or additur does not agree, the court shall order a new trial in the cause on the issue of damages only.

*Id.* (emphasis added). In JLPOA's motion for remittitur as to future medical damages, it alleged that,

> the amount of damages awarded for future medical care is excessive and does not comport with the manifest weight of evidence adduced at trial. Accordingly, JLPOA respectfully

12

request that this Court remit the jury's award for the cost of Mr. Schnurr's future medical care to $5,782,811, *which is the **only sum** that can be rationally supported by the evidence in this case.*

In the motion, JLPOA reviewed the testimony of the Schnurrs' damage experts and showed the court how their testimony together with the testimony from Mr. Schnurr and his children only supported an award of $5,782,811. At the end of the hearing, plaintiff's counsel announced that Mr. Schnurr had died a couple of days earlier. JLPOA filed a suggestion of death a few days later. JLPOA then filed an amended motion for new trial and remittitur, arguing that the late notice of Schnurr's death was plaintiff counsel's attempt at "gamesmanship" in an attempt to obtain a stipulation as to the amount of remittitur. JLPOA contended that because of Schnurr's death, the damages should be remitted to zero, stating that this was "newly discovered evidence."

Schnurr filed a response, noting that JLPOA's contention that the damages must be reduced because of the post-verdict death was completely contrary to the law. The trial court agreed and denied the amended motion. It granted however, JLPOA's original motion for remittitur and reduced the future medical expenses to the amount requested in the motion, $5,782,811. Its ruling was based, not on the agreement of plaintiff's counsel to the amount, but by reviewing the trial testimony and determining that the jury award was contrary to the manifest weight of the evidence, and the only appropriate figure was the one it ordered.

The majority concludes that JLPOA is the adversely affected party who can demand a new trial because it refuses to accept the remitted amount. Thus, the final judgment must be reversed for a new trial, because JLPOA now refuses to accept the remitted amount.

I would hold that JLPOA is not the adversely affected party within the meaning of the statute or the case law, and its amended motion had to be denied because it was completely unsupported in the law. In other words, JLPOA has received with the remittitur exactly what it contended was the amount of future medical that the trial evidence supported.

It is indeed unfortunate that Mr. Schnurr died not long after the trial in this action. But his death is irrelevant to the determination of the post-verdict motions because the motion for new trial and motion for remittitur depended upon the evidence submitted at trial, not on what happened thereafter. Indeed, when a plaintiff dies post-verdict, the case is not

13

abated nor are post-verdict motions affected.  In *Kaufman v. Herrman*, 748 So. 2d 310 (Fla. 4th DCA 1999), the plaintiff in a medical malpractice action died after the verdict in her favor but before final judgment was entered.  Defense counsel sought to abate the action because of her death, which the trial court denied, and this Court affirmed.  We noted:

> With specific relation to the facts before us, the rule that death does not effect an extinguishment of a judgment applies when the party dies while an appeal is pending, while post-trial motions remain undisposed of, and even during the period between the return of a verdict and the entry of a judgment.

*Id.* at 312 (citing *Reed ex rel. Reed v. U.S.,* 891 F.2d 878 (11th Cir. 1990) (quoting *Variety Childs. Hosp., Inc. v. Perkins*, 382 So. 2d 331, 336 (Fla. 3d DCA 1980))).  Thus, we affirmed the final judgment for the deceased plaintiff.

What I glean from *Kaufman* is that once a trial is held and verdict obtained, the death of the parties does not prevent the entry of judgment and disposition of post-trial motions.  But the motions, including remittitur, must comport with the law.

A remittitur requires that the court review the evidence to determine whether the verdict is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.  § 768.74(1), Fla. Stat. (2019).  The trial judge's additur or remittitur is ordered "because of a jury verdict's excessiveness or inadequacy," not because of events post-trial.  *See Waste Mgmt., Inc. v. Mora*, 940 So. 2d 1105, 1109 (Fla. 2006).  The statute does not permit the parties to bring in new evidence in order to obtain a remittitur.  This includes the unfortunate demise of the plaintiff.  JLPOA's original motion for remittitur alleged that an award of $5,782,811 was the only amount of future medical expense supported by the evidence, outlining the damage evidence presented.  The trial court agreed, granting a remittitur to exactly what JLPOA contended.

The court denied the amended motion, as well it should have, because it was not legally sufficient.  The statute requires that the court review, upon proper motion, the excessiveness or inadequacy of the award in light of the facts and circumstances that were presented to the trier of fact.[1]

---

[1] While not in effect at the time JLPOA made its motion, Florida Rule of Civil Procedure 1.535 incorporates the statutory requirements for a motion for remittitur: "(a) Within the time provided in rule 1.530 (b), any party may serve a motion for remittitur or additur. *The motion shall state the*

The amended motion did not rely on any facts and circumstances presented to the trier of fact to justify a remittitur. It relied on Mr. Schnurr's subsequent death to request a remittitur to zero. Because the motion was legally insufficient to claim remittitur under section 768.74, the court appropriately denied the motion.

As the trial court remitted the future medical expenses to exactly what was requested by JLPOA in its only legally sufficient motion, JLPOA cannot be considered the adversely affected party complaining about the amount of the remittitur. It is not entitled to a new trial on future medical expenses.

I also conclude that it is immaterial whether plaintiff's counsel had the authority to consent or agree to the remittitur at the hearing. The remittitur amount decided on by the court was based upon the facts in evidence at trial and was not contested by plaintiff, the adversely affected party. The statute does not require the adversely affected party, here the plaintiff, to actively consent to the remittitur, but it does require the adversely affected party to object to the remittitur and demand a new trial in lieu of the court's remittitur and then the court at that point is required to grant the new trial.[2]

JLPOA, and the majority, castigate the plaintiffs' attorney for failing to advise it of Mr. Schnurr's passing until late in the hearing. I agree that the plaintiffs' attorney should have advised the court of this event, but it really was, in my mind, irrelevant to the legal issues which were being considered both in the motion for new trial and motion for remittitur. Those motions focus on what occurred at trial, not what occurred after trial. In fact, I find JLPOA's position lacks candor in demanding a remittitur to zero when there is no possibility that the law supports such a result.

With the remittitur the trial court ordered, the heirs of Mr. Schnurr would receive an amount for future medical expenses which would not be incurred. The law has always recognized a plaintiff's right to future damages even though a plaintiff might recover future damages reduced to present value and then die before the end of his or her life expectancy upon

_____

*applicable Florida law under which it is being made, the amount the movant contends the verdict should be, and the specific evidence that supports the amount stated or a statement of the improper elements of damages included in the damages award.*" Fla. R. Civ. P. 1.535 (emphasis added).

[2] Section 768.74(4), Florida Statutes (2019), provides: "[i]f the party adversely affected by such remittitur or additur *does not agree*, the court shall order a new trial in the cause on the issue of damages only." (emphasis added).

15

which that value was calculated. Even the Legislature recognizes the entitlement of a claimant's estate to the present value of such damages. Section 768.78, Florida Statutes, provides for an alternative method of paying large economic damage awards through periodic payments over time. But, if the claimant dies before the time period in which the payments are due is complete, "the remaining liability of the defendant, reduced to present value, shall be paid into the estate of the claimant in a lump sum." *See* § 768.78(1)(b), Fla. Stat. (2019). In this statute, the Legislature has not tried to cut off future economic damages due to the premature death of a claimant, even if that claimant dies one day after payments commence.

The trial court did not err in entering its order or remittitur and denying JLPOA's amended motion. I would affirm the final judgment in its entirety.

* * *

***Not final until disposition of timely filed motion for rehearing.***

16